```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION


KIMBERLY J. ORTMAN,

          Plaintiff,

     vs.                              Civil Action 2:14-cv-1900
                                      Judge Watson
                                      Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
```

                    **REPORT AND RECOMMENDATION**

**I.   Background**

　　　This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is before the Court for consideration of *Plaintiff, Kimberly J. Ortman's, Statement of Errors* ("*Statement of Errors*"), Doc. No. 11, the *Defendant's Memorandum in Opposition*, Doc. No. 16, and *Plaintiff's Reply*, ECF 17.

　　　Plaintiff Kimberly J. Ortman protectively filed her applications for benefits on August 9, 2011, alleging that she has been disabled since May 30, 2008.  *PAGEID* 68, 248-62.  The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

　　　An administrative hearing was held on April 4, 2013, at which plaintiff, represented by counsel, appeared and testified, as did

Walter B. Walsh, Ph.D., who testified as a vocational expert. *PAGEID* 68, 84. In a decision dated July 15, 2013, the administrative law judge concluded that plaintiff was not disabled from May 30, 2008, through the date of the administrative decision. *PAGEID* 68-79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 14, 2014. *PAGEID* 54-57.

Plaintiff was 41 years of age on the date of the administrative decision. *See PAGEID* 79, 248. Plaintiff was last insured for disability insurance purposes on June 30, 2010. *PAGEID* 70. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a gas station cashier, fast food worker, sales promotion representative, and shuttle bus driver. *PAGEID* 77. She has not engaged in substantial gainful activity since May 30, 2008, the alleged onset date. *PAGEID* 70.

**II. Medical Evidence**

Radiology reports from October 14, 2010, revealed mild degenerative changes in the lumbar spine and no radiographic abnormalities in the cervical spine. *PAGEID* 316-17. An MRI of the lumbar spine on December 5, 2011, revealed degenerative disk disease in the lower lumbar spine, a small broad-based posterior disk protrusion at the L5-S1 level, and mild bilateral lateral recess narrowing at L5-S1 and L4-5, greater on the left. *PAGEID* 330, 399. No significant central spinal canal or neural foraminal narrowing was

2

seen, and there was no acute osseous abnormality of the lumbar spine. *Id*.

W. Jerry McCloud, M.D., reviewed the record for the state agency and completed a residual functional capacity assessment on September 23, 2011. *PAGEID* 159-60. Dr. McCloud opined that plaintiff can lift and/or carry 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. *PAGEID* 160. Dr. McCloud noted that "[o]ther than the scoliotic defect the claimant's physical evaluation is normal. No neurological changes distal to the scoliosis and no cardiopulmonary functional loss." *Id*. According to Dr. McCloud, plaintiff could frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. *Id*. Plaintiff could occasionally climb ladders, ropes, or scaffolds. *Id*. Gerald Klyop, M.D., reviewed the record and affirmed Dr. McCloud's assessment on March 13, 2012. *PAGEID* 185.

Plaintiff was consultatively evaluated by Marc E. Miller, Ph.D., on September 28, 2011. *PAGEID* 320-25. Dr. Miller assigned a global assessment of functioning ("GAF") score of 50 and diagnosed bipolar I disorder, primarily manic and panic disorder, without agoraphobia. *PAGEID* 325. Dr. Miller opined that plaintiff's "abilities and limitations in regard to understanding, remembering and carrying out instructions indicate no difficulty." *PAGEID* 324. Plaintiff's "abilities and limitations in regard to interaction with coworkers, supervisors and the public indicate some difficulty, due to her

amputation and related adjustment with depression.[1] She tends to withdraw when she is in a great deal of pain." *Id*. According to Dr. Miller, plaintiff's "abilities and limitations in regard to maintaining attention span and concentration, is rather poor. She notes a long history of ADHD at a severe level. She had difficulty sitting through the interview." *Id*. Plaintiff's "abilities and limitations in regard to dealing with stress and pressure is also very poor." *Id*.

Karla Voyten, Ph.D., reviewed the record for the state agency and completed a mental residual functional capacity assessment on October 19, 2011. *PAGEID* 161-62. According to Dr. Voyten, plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. *Id*. Dr. Voyten further opined that plaintiff is limited to routine tasks, work tasks that do not involve working closely with others, and work duties that remain relatively static. *Id*.

Plaintiff reported to Family Healthcare, Inc., from 2008 through at least December 2012 for, *inter alia*, endometriosis, smoking cessation, shoulder pain, headaches, sinusitis, and back and neck pain. *PAGEID* 340-59, 412, 415-19. Plaintiff regularly reported back

---

[1] The record reflects no other reference to an amputation and the parties make no mention of Dr. Miller's reference to an amputation.

4

pain from at least July 2009 through 2012, *see* PAGEID 340-56, and she was prescribed pain medication. PAGEID 346, 349, 419. On January 25, 2012, plaintiff reported stress and a headache that affected her vision. PAGEID 338. She was diagnosed with migraine headaches. *Id*. Plaintiff was considering back surgery in April 2012, PAGEID 418, but in September 2012 she declined surgery because of family obligations. PAGEID 416. Plaintiff requested a referral to pain management in December 2012. PAGEID 415.

Plaintiff was evaluated at a pain management clinic by Michael Sayegh, M.D., on January 4, 2013, for pain in her low back and legs. PAGEID 422-23. Plaintiff reported that she had tried anti-inflammatory drugs, chiropractic treatment, and physical therapy without success. PAGEID 422. Upon examination, plaintiff had trigger points and tenderness bilaterally in the lower back area and in the paraspinal muscles. *Id*. Neurological examination of the lower extremities showed mild decreased sensation in the lateral aspect of both lower extremities, worse on the right. Leg raising tests were mildly positive. *Id*. Dr. Sayegh diagnosed lumbago, sprain/strain, sciatica, multiple herniated nucleus pulposus with myelopathy with tear, degenerative disc disease, foraminal stenosis, lumbar facet syndrome, unspecific vascular headache, adult ADHD, bipolar, tachycardia, anxiety, depression, and sleep disturbance. Dr. Sayegh prescribed pain medication. *Id*.

Plaintiff reported to Six County, Inc., on October 24, 2012, "for Social Security office and to get on meds." PAGEID 368-76. Plaintiff

5

reported "'fits' of mood swings and crying," irritatation to the point of road rage, and not being able to stand in line at the grocery store. *PAGEID* 368. Plaintiff rated the severity of her symptoms as five on a 10-point scale. She reported that she stays in her home because of panic and anxiety attacks. *Id*. Plaintiff displayed "obvious symptoms of ADHD, having flight of ideas, very distractible, and fidgety." *PAGEID* 375. Plaintiff was assigned a GAF of 62 and diagnosed with attention deficit/hyperactivity disorder, predominantly inattentive type, panic disorder with agoraphobia, and obsessive-compulsive disorder. *PAGEID* 374-75. Plaintiff underwent counseling sessions on November 7 and 29, 2012, February 8 and 15, 2013, and March 22, 2013. *PAGEID* 377-78, 424-28, 445.

**III. Administrative Hearing**

Plaintiff testified at the administrative hearing that, on a typical day, she gets up between 7:30 and 8:30 a.m. *PAGEID* 129. Plaintiff cares for her four year old daughter who goes to school one day per week; a teacher comes to the house for her child one day per week. *Id*. Plaintiff can care for her personal hygiene and do laundry and dishes. *PAGEID* 109, 130. She tries to watch television, but has trouble paying attention; she uses a computer for five to 10 minutes each day to use social media and play games. *PAGEID* 131. She goes to bed around 8:00 p.m. and does not sleep during the day. *PAGEID* 132.

Plaintiff testified that she drives once or twice per month to the grocery store, but that she gets road rage, panic attacks, and anxiety attacks while driving and becomes irritated with people at the

6

store. *PAGEID* 95, 110-11. She experiences mood swings and racing thoughts, and has difficulty concentrating. She is frequently frustrated and irritated. *PAGEID* 106-08. She has anxiety attacks, but her medication is "fast working" and calms her down. *PAGEID* 112-13.

Plaintiff testified that she takes medication for her back pain. *PAGEID* 114. She has pain in her back and neck when she wakes up; she feels like she cannot breathe or move. *PAGEID* 114-15. The pain radiates throughout her body and causes difficulty with sitting, standing, and walking. *PAGEID* 115-16. She cannot sleep lying down and she wakes up with pain multiple times a night. *PAGEID* 116, 122-23. She can sit for 15 minutes, stand for 10 minutes, and walk one half block. *PAGEID* 116-17.

A few times per year, plaintiff gets headaches that cause tunnel vision, speech impairment, and numbness over half her body. *PAGEID* 120-21, 124-25. Once or twice per week, she gets headaches that numbs half her body, including her teeth and tongue. *PAGEID* 121.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge. *PAGEID* 134-36. According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a gas station cashier, fast food worker, and sales promotion representative, but could perform such jobs as picker, cleaner, and packager. *PAGEID* 133, 136.

7

**IV. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease and bipolar disorder. *PAGEID* 70.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform "medium" work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) except that the claimant could lift and carry 25 pounds frequently and 50 pounds occasionally.  In an eight-hour workday, the claimant could sit six hours, stand and/or walk six hours.  She could occasionally climb ladders, ropes, or scaffolds.  She could frequently climb stairs, balance, stoop, kneel, crouch, or crawl.  From a mental standpoint, the claimant could understand, remember, and follow simple, routine tasks and occasionally more detailed or complex tasks.  Concentration, persistence, and pace would be limited to occasional for any task that are more than routine tasks.  She is limited to occasional interaction with supervisors, coworkers, and the public; and no tasks that involve working closely with others.  In addition, she is capable of work that involves relatively static changes that can be easily explained.

*PAGEID* 71-73.  Although this RFC precludes the performance of plaintiff's past relevant work as a gas station cashier, fast food worker, sales promotion representative, and shuttle bus driver, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as cleaner, packager, and order picker.  *PAGEID* 77-78.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from May 30, 2008, through the date of the administrative decision.  *PAGEID* 78.

**V.    Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff first argues that the administrative law judge erred in her credibility determination. Plaintiff specifically argues that her "credibility should have been

9

enhanced by her persistent efforts to obtain pain relief; however, the ALJ failed to consider Plaintiff's efforts in her credibility determination." *Statement of Errors*, p. 4.  Plaintiff also argues that the administrative law judge "failed to set forth reasons to substantiate her credibility finding," "did not specifically give reasons for such a credibility finding," and "simply concluded that the Plaintiff's statements and symptoms were not entirely credible." *Id*. at pp. 4-6.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

    1. The individual's daily activities;

10

> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge summarized plaintiff's subjective complaints and her testimony

11

at the administrative hearing, but found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *PAGEID* 74.  The administrative law judge evaluated the medical evidence, including plaintiff's reports of pain and treatment for back pain, and found that the "record reveals relatively infrequent trips to the doctor for the allegedly disabling physical and mental symptoms." *PAGEID* 74-76.  The administrative law judge noted that there are relatively few records from 2008 and 2009 and, although plaintiff reported back pain in 2009, there were no significant objective findings noted at that time. *PAGEID* 74.  The administrative law judge evaluated plaintiff's ongoing complaints of pain, but found that "the claimant utilized relatively routine and conservative treatment methods, such as pain medication and muscle relaxers." *PAGEID* 75.  With regard to plaintiff's reports of "'stroke-like' headaches," the administrative law judge noted that "the record does not corroborate the severity or frequency of these headaches." *Id*.  As to plaintiff's complaints of mental health symptoms, the administrative law judge found that "the evidence reveals relatively infrequent trips to the doctor for allegedly disabling mental symptoms with inconsistent mental health treatment throughout the relevant record." *Id*.  The administrative law judge also cited plaintiff's treatment at Six County Mental Health Center and noted, *inter alia*, that she was found to be "generally functioning pretty well" and reported the severity of her problems on a scale of one to 10 as only a five.  *Id*.

12

Plaintiff argues that the administrative law judge erred in discounting plaintiff's credibility on the basis that she had undergone only conservative treatment for her back pain. *Plaintiff's Reply*, pp. 1-3. According to plaintiff, she was "not required to pursue treatment methods that are greater than conservative means" and she was not required to undergo back surgery. *Id*. at p. 2. The administrative law judge did not err in this regard. As noted by plaintiff, *Plaintiff's Reply*, p. 2, persistent attempts by a claimant to obtain relief from pain may lend support to allegations of intense and persistent symptoms. SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996). However, the administrative law judge noted plaintiff's attempts to obtain relief but found that her treatment was "relatively routine and conservative." *PAGEID* 74-75. Plaintiff does not challenge the administrative law judge's determination that her treatment was "relatively routine and conservative." Moreover, the administrative law judge's determination in this regard is supported by substantial evidence. Dr. Sayegh classified plaintiff's treatment as conservative and, as noted by the administrative law judge, *PAGEID* 75, discussed more aggressive treatment options that plaintiff chose not to pursue. *PAGEID* 422-23.

Plaintiff's arguments to the contrary notwithstanding, the administrative did not "simply conclude[] that the Plaintiff's statements and symptoms were not entirely credible." *Statement of Errors*, p. 6. The administrative law judge's credibility determination is clearly explained, and her analysis enjoys

13

substantial support in the record. Under these circumstances, this Court will not – and indeed may not - revisit that credibility determination. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Plaintiff next argues that the administrative law judge erred in failing to secure the testimony of a medical expert at the administrative hearing. *Statement of Errors*, pp. 7-8. Plaintiff also argues that the administrative law judge made an improper medical determination in evaluating the opinions of Dr. Miller and Dr. McCloud. *Id*. According to plaintiff, the administrative law judge could not evaluate Dr. Miller's opinion without making a medical determination because Dr. Miller did not give a "function by function analysis of the limitations created by each of Plaintiff's issues." *Id*. at p. 7. Plaintiff argues that the administrative law judge could not evaluate Dr. McCloud's opinion without making a medical determination because Dr. McCloud's assessment conflicted with the medical records of Dr. Guglielmi and Dr. Sayegh. *Id*. at pp. 7-8. Plaintiff's arguments are not well taken.

An administrative law judge "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917). Further, the RFC determination is an administrative finding of fact reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir.

14

2004), and the administrative law judge, in formulating a claimant's RFC, is not required to parrot medical opinions *verbatim*. *See Neace v. Comm'r of Soc. Sec.*, No. 5:11-cv-00202-KKC, 2012 WL 4433284, at *8 (E.D. Ky. Sept. 25, 2012); *Deaton v. Comm'r of Soc. Sec.*, No. 1:10-cv-00461, 2011 WL 4064028, at *6 (S.D. Ohio Sept. 13, 2011); *Carroll v. Comm'r of Soc. Sec.*, No. 1:09cv2910, 2011 WL 3648128, at *10 (N.D. Ohio Aug. 18, 2011). The administrative law judge gave significant weight to the medical opinions of record and incorporated similar limitations in her RFC determination; significantly, the record contains no medical opinion of greater limitations than those that the administrative law judge included in her RFC determination. The record reflects sufficient evidence of plaintiff's impairments and the effects of those impairments on plaintiff's residual functional capacity. It cannot be said that the administrative law judge relied on her own lay opinion in evaluating the evidence. *See Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). Rather, the administrative law judge was called upon to evaluate the various medical opinions and determine the weight to be assigned to each. The administrative law judge properly engaged in this process and her findings in this regard enjoy substantial support in the record. It follows that the administrative law judge did not err in failing to secure the testimony of a medical expert for this purpose.

In a related argument, plaintiff contends that the administrative law judge erred in relying on the testimony of the vocational expert. *Statement of Errors*, pp. 8-10. Plaintiff specifically argues that the

hypothetical posed to the vocational expert was incomplete because it was based on improper RFC and credibility determinations. *Id*.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "Hypothetical questions, however, need only incorporate those limitations which the [administrative law judge] has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (citing *Casey*, 987 F.2d at 1235).

The administrative law judge posed to the vocational expert a complete hypothetical question that incorporated all of plaintiff's impairments as found by the administrative law judge. The vocational expert responded that such an individual could not perform plaintiff's past relevant work as a gas station cashier, fast food worker, and sales promotion representative, but could perform such jobs as picker, cleaner, and packager. *PAGEID* 133, 136. The administrative law judge relied on this portion of the vocational expert's testimony in determining that plaintiff can perform a significant number of jobs that exist in the national economy, even though she could not perform her past relevant work. *PAGEID* 77-78.

Plaintiff argues that the administrative law judge erred in not accepting the vocational expert's testimony in response to an alternative hypothetical containing additional limitations in

16

concentration, persistence, and pace. *Statement of Errors*, p. 9. It is true that the administrative law judge posed different hypotheticals to the vocational expert, which contained different functional limitations. *See PAGEID* 136-37. Nevertheless, the administrative law judge relied only on the hypothetical posed to the vocational expert that included all of the limitations contained in the RFC eventually found by the administrative law judge. The administrative law judge therefore did not err in relying on the vocational expert's testimony in this regard. *See Parks*, 413 F. App'x at 865 ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. . . . Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible.") (internal citations and quotations omitted); *Felisky*, 35 F.3d at 1036 (where a hypothetical accurately described the plaintiff in all relevant respects, the vocational expert's response to the hypothetical question constitutes substantial evidence).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report*

17

*and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

May 19, 2015                                    *s/Norah McCann King*
                                                Norah McCann King
                                                United States Magistrate Judge

18